UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT A. MESITE, INDIVIDUALLY and as | : | |
| TRUSTEE OF THE ROBERT A. MESITE 2003 | : | |
| RESIDENTIAL TRUST and the ROBERT A. | : | |
| MESITE 2012 RECOVABLE TRUST | : | CIVIL ACTION NO.: |
| | : | 3:17-cv-01630-AWT |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| HARLEYSVILLE PREFERRED INSURANCE | : | |
| COMPANY | : | |
| | : | |
| *Defendants.* | : | APRIL 29, 2019 |

**DEFENDANT HARLEYSVILLE PREFERRED INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Harleysville Preferred Insurance

Company ("Harleysville") submits this motion to dismiss Counts I, III, and IV of the Second

Amended Complaint (the "SAC") (ECF # 45) filed by Robert A Mesite, individually and as trustee

of the Robert A. Mesite 2003 Residential Trust (the "2003 Trust") and the Robert A. Mesite 2012

Revocable Trust (the "2012 Trust") (collectively, "Plaintiff").

Plaintiff asserts claims against Harleysville for: (1) declaratory judgment; (2) breach of

contract; (3) breach of the covenant of good faith and fair dealing; and (4) violations of the

Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance

Practices Act ("CUIPA"). For the reasons set forth below, Counts I, III and IV should be dismissed.

In particular, Plaintiff's declaratory judgment action should be dismissed because it is duplicative

of Plaintiff's breach of contract claim. Further, Plaintiff's cause of actions for common law and

statutory bad faith should be dismissed because a reasonable coverage dispute does not give rise

to a bad faith or CUTPA/CUIPA claim. Indeed, Plaintiff's claim for breach of the implied covenant

of good faith and fair dealing fails to allege any facts sufficient to allege a dishonest purpose or sinister motive; and, Plaintiff's CUTPA/CUIPA claim fails to allege facts to establish that Harleysville engaged in prohibited acts with such frequency as to indicate a general business, as required to state a claim under CUTPA/CUIPA.

## I.    FACTUAL BACKGROUND[1]

### A.  Nature of the Case

Plaintiff alleges that he is the sole trustee of the 2003 Trust and of the 2012 Trust. SAC ¶ 1.  The 2003 Trust owned the residential property located at 64 Charing Road, South Windsor, Connecticut 06074 (the "Property") from June 27, 2003 through June 25, 2012, and the 2012 Trust has owned the Property since June 25, 2012. SAC ¶¶ 5–6.  Plaintiff has occupied the Property since June 27, 2003. SAC ¶ 7.  The Property was constructed in 1995. SAC ¶ 8.  Harleysville issued to Plaintiff Homeowner's policy number HOA949398 (the "Policy").

Plaintiff alleges that, in September of 2016, he noticed that the basement walls of the Property had "a series of horizontal and vertical cracks throughout" and, as a result, undertook an investigation of "this condition, its cause, and the method of repair." SAC ¶ 12–13.  The investigation revealed that "the form of 'pattern cracking' found in the basement walls of [the Property] was due to a chemical compound found in certain concrete walls constructed in the late 1980s and the early 1990s[.]" SAC ¶ 14.  Plaintiff alleges that "the basement walls suffered a substantial impairment to their structural integrity"; "[i]t is only a question of time until the basement walls of the plaintiff's home will fall in"; and "[w]ith the falling in of the basement walls, the entire home will fall into the basement." SAC ¶¶ 17–19.  Plaintiff asserts that he submitted a

---

[1] Harleysville does not adopt the facts as stated by Plaintiff.  Indeed, Harleysville takes issue with many of the material allegations of the SAC and only reiterates the facts set forth in the SAC for the purposes of this Motion to Dismiss.

timely claim for coverage to Harleysville under the Policy and Harleysville denied his claim by letter dated December 7, 2017. SAC ¶¶ 21, 26.

In Count III, Plaintiff incorporates by reference the allegations of Counts I and II, and alleges further, in a conclusory fashion, that Harleysville acted in bad faith by:

- Citing to policy exclusions that are wholly inapplicable to the damages suffered to the basement walls of the plaintiff's home;

- Acting "intentionally to mislead the plaintiff and convince him that the damage suffered to his home was not covered solely to preserve its own assets by avoiding payment of a covered loss"; and

- Impeding Plaintiff's "right to receive benefits that he reasonably expected to receive." SAC ¶¶ 35–38.

In Count IV, Plaintiff incorporates by reference the allegations of Counts I–III, and alleges further, in a conclusory fashion, that Harleysville engaged in acts prohibited by CUTPA and CUIPA. Specifically, Plaintiff asserts that Harleysville has information garnered from the Insurance Services Office, Inc. ("ISO") suggesting that other insurance carriers have denied similar claims. SAC ¶¶ 47–48. Plaintiff further asserts that Harleysville is aware of case law that is purportedly unfavorable to insurance carriers in what he deems to be similar cases. SAC ¶ 49. Finally, he asserts that Harleysville "gave [Plaintiff] a knowingly false and misleading reason for the denial of coverage." SAC ¶ 50. Plaintiff also lists a string of currently pending cases to support his assertion that Harleysville "has regularly been engaged, as part of its general business practice, in refusing in attempt to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear." SAC ¶¶ 53–54.

## B. Procedural History

Plaintiff initiated this action in the Connecticut Superior Court, Judicial District of Tolland, by way of summons and complaint, dated August 24, 2017. Harleysville thereafter removed to

the United States District Court for the District of Connecticut on September 28, 2017 (ECF #1).

Plaintiff filed a four-count First Amended Complaint (the "FAC") on April 24, 2018, alleging

breach of contract, bad faith, and violations of CUTPA/CUIPA, as well as requesting declaratory

judgment (ECF # 25).  Harleysville moved to dismiss the FAC in its entirety on May 7, 2018 (the

"FMTD") (ECF # 26).  Harleysville's motion was granted as to all four counts on February 13,

2018 (ECF # 41).  On April 15, 2019, Plaintiff filed the SAC, alleging the same four causes of

action against Harleysville (ECF # 45).  Harleysville now moves to dismiss Counts I, III, and IV

of Plaintiff's SAC.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed to

assess the legal feasibility of a complaint. *See Ryder Energy Distrib. Corp. v. Merrill Lynch*

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (*quoting Geisler v. Petrocelli*, 616 F.2d 636,

639 (2d Cir. 1980)).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor

of the plaintiff, and decide whether it is plausible that plaintiff has a valid claim for relief. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555–56 (2007).

While a Court is required to accept material facts alleged in the complaint as true, under

*Twombly*, those "[f]actual allegations must be enough to raise a right to relief above the speculative

level," and assert a cause of action with enough heft to show entitlement to relief and "enough

facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*,

556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must

be supported by factual allegations.")  "The plausibility standard set forth in *Twombly* and *Iqbal*

obligates the plaintiff to provide the grounds of his entitlement to relief through more than labels

4

and conclusions, and a formulaic recitation of the elements of a cause of action." *Mazzarella v. Amica Mut. Ins. Co.*, No. 3:17-CV-598, 2019 WL 780217, at *1 (D. Conn. Feb. 8, 2018) (Underhill, J.) (internal citations and quotation marks omitted),

## III.   ARGUMENT

In his SAC, Plaintiff alleges a mere breach of contract dispute with conclusory assertions to support his claims of common law and statutory bad faith.  As a result, Count I should be dismissed because it is duplicative of Count II and seeks no relief separate from the relief requested in Count II.  Likewise, Count III should be dismissed because Plaintiff fails to sufficiently plead a cause of action for breach of the implied covenant of good faith and fair dealing.  Count IV also fails as a matter of law as it is devoid of any facts which set forth or from which it can reasonably be inferred that Harleysville engaged in any conduct prohibited by CUIPA, let alone with such frequency as to indicate a "general business practice" as is required.

### A. Declaratory Relief is Not Available Because Plaintiff Has Asserted a Breach of Contract Claim Which Renders Count I Superfluous

Count I of the SAC should be dismissed because it is wholly duplicative of Count II and seeks no relief separate from the relief requested in Count II.  In the FMTD, Harleysville argued that Plaintiff's declaratory judgment count should be dismissed because it is identical to Plaintiff's count for breach of contract.  Despite being given a chance to replead, Plaintiff has failed to cure this deficiency, and thus, Count I must be dismissed.

The only addition made to Counts I and II is Paragraph 24 of Count I, which inserts the terms of the Additional Collapse provision of the Policy.  Despite Plaintiff's inclusion of this Policy language, his next paragraph merely alleges that "[t]he damage suffered to the basement walls of the plaintiff's home is a covered loss under the terms of *one or more* of the homeowner's policies issued by the defendant[.]" SAC ¶ 25 (emphasis added).  This Count is still technically

5

deficient as it fails to allege that the Policy provision listed in Paragraph 24 is the provision purportedly breached by Harleysville.  Further, Count II merely realleges the allegations set forth in Paragraphs 1 through 29, and adds no further allegations.  Thus, the addition of Paragraph 24 to Count I is simultaneously an addition to Count II, rendering Counts I and II as identical now as they were in the FAC.

In considering whether to provide relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), et seq., courts consider whether, *inter alia*: (1) the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) a judgment would finalize the controversy and offer relief from uncertainty; and (iii) there is a better or more efficient remedy. *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006).

In Harleysville's FMTD, it argued that Courts in this District have made clear that "declaratory relief is not intended to provide plaintiff 'a second cause of action for the determination of identical issues.'" *Burgeson v. Downing*, No. 3:06-cv-1663 (WWE), 2009 WL 185593, at *1 (D. Conn. Jan. 22, 2009) (citation omitted).  Thus, courts have routinely dismissed declaratory judgment counts where other causes of action, notably breach of contract claims, would provide the same remedy. *Id.* at *3 ("If plaintiff were to prevail on his claim for damages, the Court necessarily would have determined that plaintiff's rights were violated [and a] declaration to that effect adds nothing to the case"); *Fetch, NY Inc. v. Allstate Ins. Co.*, No. 13-cv-6578 (KBF), 2014 WL 11369638, at *4 (S.D.N.Y. Aug. 5, 2014) (declaratory judgment claim alleging that an insurance company's denial of coverage was improper duplicated plaintiff's breach of contract claim).

In its Memorandum of Law in Opposition to Harleysville's FMTD, Plaintiff conceded that "the claim for breach of contract and declaratory judgment overlap and offer the same substantive

relief." (ECF # 29, at 4, n. 1.)  Because Plaintiff is seeking declaratory relief that is entirely duplicative of the relief sought elsewhere in the SAC, each of the factors enunciated by the Second Circuit for determining whether to grant a declaratory judgment counsels in favor of dismissing this claim. *N.Y. Times*, 459 F.3d at 167.  First, a declaratory judgment would not serve a "useful purpose in clarifying or settling the legal issues involved," because the breach of contract cause of action is premised on the resolution of the exact same legal issues. *See, e.g., U.S. Bank N.A. v. PHL Variable Ins. Co.*, 2014 WL 998358, at *7–8 (S.D.N.Y. 2014).  Second, declaratory relief would not offer any relief from uncertainty because "any uncertainty regarding the legality of [Defendants'] actions will of necessity be relieved without the need for a declaratory judgment." *Id.* at *27.  Accordingly, and because Plaintiff has failed to cure the defect in Count I of the FAC, rendering it redundant of Count II, Count I of the SAC is legally irrelevant and should be dismissed.

**B.  Plaintiff Has Not Adequately Pleaded a Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing**

In Count III, Plaintiff merely realleges his breach of contract claim and includes an allegation that amounts to nothing more than a dispute over what provisions of the Policy apply to Plaintiff's loss.  The law is well-settled that Plaintiff's allegations fail to meet the standard for pleading a claim for breach of the covenant of good faith and fair dealing.

Connecticut law is clear on the necessary elements of a claim for breach of the implied covenant of good faith and fair dealing (i.e. common law bad faith).  A plaintiff must plead and prove: (i) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (ii) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (iii), that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive

7

under the contract, the defendant was acting in bad faith. *Motiva Enterprises, LLC v. W.F. Shuck Petroleum*, Civil Action No. 3:10–CV–793 (JCH), 2012 WL 601245, *9 (D. Conn. Feb. 22, 2012).

"Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *De la Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004). Put simply, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." *Id.*; *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013). In the insurance context, "a mere coverage dispute, or even simple negligence on the part of the insurer, does not constitute bad faith on the insurer's part." *Van Dorsten v. Provident Life & Accident Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008). Likewise, bad faith cannot be established when the insurer denies a claim that is fairly debatable—that is, if the insurer has an arguable basis for denying coverage. *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005); *see also, Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 629 F. App'x 127, 131 (2d Cir. 2015).

Where an insurance claimant alleges a breach of contract, but fails to plead any "*factual indication of bad faith, implicitly or explicitly,*" its bad faith claim is subject to dismissal under Rule 12(b)(6). *Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04 CV 01996 PCD, 2005 WL 3619253, at *3 (D. Conn. Nov. 10, 2005) (emphasis added); *see also, Alexandru v. Strong*, 81 Conn. App. 68, 81, *cert. denied,* 268 Conn. 906 (2004) (a claim for breach of the implied covenant of good faith is legally insufficient without factual allegations indicating that an insurer acted with "dishonest purpose" or "sinister motive").

Count III is merely an attempt to transform a straight-forward coverage dispute into a bad faith claim – a tactic that Connecticut courts actively discourage:

> [F]irst-party actions against insurers . . . are increasingly accompanied by
> bad faith claims and CUTPA/CUIPA actions.  Not infrequently, these
> additional claims are themselves brought in bad faith, to "up the ante" at
> pretrial and trial by increasing the insurer's exposure; to exponentially
> increase the scope of discovery, with the hope of obtaining the insurer's
> entire file, including its work-product investigation; and for purposes of trial
> strategy.   In such cases, *the prejudice to the defendant is evident*.
> *Khanthavong v. Allstate Ins. Co.*, No. 324502, 1996 WL 704366, at *6
> (Conn. Super. Ct. Dec. 3, 1996) (emphasis added); *accord Jello-Pitkin v.
> GEICO Indem. Co.*, No. CV-09-5012395-S, 2011 WL 3930346, at *5 (Conn.
> Super. Ct. Aug. 16, 2011).

Plaintiff alleges that Harleysville "denied coverage by citing to policy exclusions that are wholly inapplicable to the damage suffered to the basement walls of the plaintiff's home" and that this conduct was "intentional[ ]." SAC ¶¶ 35-37.  Yet, whether certain provisions are applicable or inapplicable is, at its core, a question of contract interpretation.  Put differently, if an insurer citing a provision of a policy that the plaintiff believed was "inapplicable" was enough, on its own, to give rise to a bad faith claim, then *every* insurance coverage dispute necessarily also would be a bad faith case.  Connecticut courts have repeatedly rejected such a notion, even in cases in which the insurer's policy interpretation had previously been rejected. *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-01435 (VAB), 2017 WL 6731713, at *10 (D. Conn. 2018) ("Nor is it bad faith for an insurer to rely on an interpretation of a policy that 'has not prevailed so far' in the courts so long as it is not 'unreasonable on its face'").  Plaintiff cannot maintain a bad faith claim where the only allegation of bad faith is the denial of the claim itself, simply because Plaintiff believes that certain policy provisions are "inapplicable."

The skeletal bad faith allegations presented in this case are particularly insufficient in that the applicability of various insurance provisions in "concrete foundation" cases is a hotly contested issue in multiple ongoing Connecticut federal and state proceedings.  In fact, some of these issues have recently been certified for review by the Connecticut Supreme Court. *See Karas v. Liberty Ins. Corp.*, No. 3:13-cv-01836 (SRU) Order dated April 30, 2018 (D. Conn. 2018) (certifying

9

question of "[w]hat constitutes a 'substantial impairment of structural integrity' for purposes of applying the 'collapse' provision of this homeowners' insurance policy."). Under Connecticut law, "a plaintiff cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim." *McCulloch v. Hartford Life & Accident Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005). There can be no dispute that the issue of coverage for "concrete foundation" cases like this one continues to be debated in both this Court and Connecticut state courts, and will likely continue to be debated until the certified question submitted by Judge Underhill is answered. Accordingly, Plaintiff's conclusory allegation that Plaintiff "intentionally" cited to inapplicable policy provisions fails to sufficiently plead a cause of action for breach of the implied covenant of good faith and fair dealing, and his claim is subject to dismissal under Rule 12(b)(6).

## C. Plaintiff Has Not Adequately Pleaded a Cause of Action for Violations of CUTPA/ CUIPA

Count IV fails as a matter of law as it is devoid of any facts which set forth or from which it can reasonably be inferred that Harleysville engaged in any conduct prohibited by CUIPA, let alone with such frequency as to indicate a "general business practice" as is required.

### 1. Plaintiff Has Not Alleged Conduct Falling Within the Purview of § 38a-816(6)

Conn. Gen. Stat. § 38a-816(6) provides an exclusive list of conduct violating CUIPA for unfair claims settlement practices. In Paragraphs 50 and 52, Plaintiff generously quotes, almost verbatim, the statutory language of § 38a-816(6); however, Plaintiff fails to allege any factual allegations as to how and in what manner Harleysville purportedly violated the statute.

A cause of action for violations of CUTPA/CUIPA requires more than mere conclusory allegations. *See, e.g., Fischer v. Fid. Nat. Title Ins. Co.*, No. FSTCV126013324S, 2014 WL 7587936, at *4 (Conn. Super. Ct. Dec. 5, 2014) (noting that § 38a-816(6) requires that a plaintiff's

allegations contain factual detail); *Starview Ventures, LLC*, 2006 WL 3069664 (a plaintiff asserting a violation of CUIPA based on unfair claims settlement practices must allege specific facts); *Seven Oaks Partners, LP v. Vigilant Ins. Co.*, No. FSTCV095012672S, 2010 WL 3038435 (Conn. Super. Ct. 2010) (requiring explicit factual references).

Plaintiff asserts two theories as to how Harleysville violated CUTPA/CUIPA. The first is merely a reiteration of his breach of contract claim. A simple breach of contract claim does not amount to an actionable unfair settlement practice under CUTPA/CUIPA. *State v. Acordia*, 310 Conn. 1 (2013) (§ 38a-816 sets forth an exclusive listing of conduct which violates CUIPA; a simple breach of contract does not amount to an actionable unfair settlement practice under CUTPA/CUIPA); *Blakeslee Arpaia Chapman, Inc. v. Helmsman Mgmt. Servs., Inc.*, No. 443753, 2002 WL 172670, at *3 (Conn. Super. Ct. Jan. 9, 2002) (CUTPA and CUIPA claims have to involve more than "simple contract breaches"); *Van Dorsten v. Provident Life & Acc. Ins. Co.*, 554 F. Supp. 2d 285, 288 (D. Conn. 2008) (mere breach of an insurance contract, or even a breach of the covenant of good faith and fair dealing, is not sufficient to make out a CUTPA/CUIPA claim); *Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04 CV 01996 PCD, 2005 WL 3619253, at *4 (D. Conn. Nov. 10, 2005) (a single failure to defend or indemnify an insured does not rise to the level of a § 38a-816 violation).

Plaintiff's second theory seems to rest on his allegations that Harleysville is part of the ISO, and through that membership, has knowledge of various cases where similar issues are being addressed. For example, Plaintiff asserts that Harleysville has knowledge of *Bacewicz v. NGM Ins. Co.*, No. 3:08-CV-1530 (JCH), and that this knowledge supports a CUTPA/CUIPA claim because "the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the plaintiff's policies." Plaintiff's reliance on

11

*Bacewicz* is misplaced. First, in *Bacewicz*, both parties moved for summary judgment, and the parties had far more information available regarding the actual degradation of the basement walls. Second, the plaintiffs in that case were denied summary judgment because "reasonable juries could differ as to whether NGM breached the insurance contract that is the subject of this case." *Id.* at *12. Indeed, the breach of contract claim was left to the discretion of the jury at trial. Tellingly, however, in *Bacewicz*, the defendant insurer won summary judgment with regard to the bad faith claim.

Moreover, even though an insurer's position has not prevailed thus far, it is not unreasonable for Harleysville to rely upon an interpretation of its policy provisions under existing insurance law, unless and until such time as that position is expressly rejected by Connecticut's appellate courts or the Second Circuit. *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 415 (D. Conn. 2017) (finding that an insurer may rely on "interpretations of the terms 'collapse' and foundation' that have been repeatedly rejected by Connecticut state and federal trial courts" because "[d]istrict court decisions . . . are not precedential and create no rule of law binding on other courts.") The Connecticut Supreme Court has found that a defendant insurer cannot be held to have taken a position in bad faith when the position "although incorrect, was not an entirely unreasonable one." *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 45 (2005). More specifically, this Court has held that "[u]nless and until a higher court rejects [an insurer's] position, the insurer is entitled to continue making its (hitherto unsuccessful) arguments with respect to coverage; *without exposing itself to liability under CUTPA/CUIPA*." *Roberts*, 264 F. Supp. 3d, at 416 (emphasis added).

Plaintiff's reference to Harleysville's participation in ISO is equally unpersuasive. At least one other court in this District has rejected the argument that a viable CUTPA/CUIPA claim can

12

be based merely on the fact that the insurer participates in ISO. *See Liston-Smith v. CSAA Fire &*
*Cas. Ins. Co.*, 287 F. Supp. 3d 153 (D. Conn. 2017) ("Plaintiffs maintain that CSAA violated
CUIPA and CUTPA, but they do not provide facts in support of their claim beyond arguing that
CSAA wrongly denied them coverage under the Policy and shared information with other
insurance companies through the Insurance Services Offices, Inc.")

    In sum, Plaintiff's theory of liability under CUTPA/CUIPA is negated by available case
law and, thus, Plaintiff has failed to allege sufficient facts to establish the requisite elements of a
CUTPA/CUIPA claim and Count IV should be dismissed.

### 2. Plaintiff Fails to Allege Facts Indicating that Harleysville's Alleged Conduct Constitutes a General Business Practice

    Plaintiff cites to a string of cases—which have not yet been decided—in support of his
allegation that Harleysville engaged in a general business practice of bad faith.  Plaintiff's
reference to the *Moura* and *Eichacker* cases provide no support for his CUTPA/CUIPA claim.
Connecticut courts have repeatedly found that merely listing other cases *filed* against the defendant
does not establish the requisite "general business practice." *See, e.g., Hawkeye, LLC v. Zurich Am.*
*Ins. Co.*, No. 3:10-cv-899 (JCH), 2011 WL 1216408, at *3–4 (D. Conn. Mar. 29, 2011) (dismissing
CUTPA/CUIPA claim where the only allegations were that other policyholders had filed suits
against the insurer.)

    The insignificance of the referenced cases is even more telling here in that there have been
no substantive rulings in *Bolles*, *Moura* or *Eichacker*, let alone any rulings adverse to Harleysville.
Specifically, in *Bolles*, discovery is presently stayed awaiting the outcome of *Karas*, and
Harleysville has a motion to dismiss pending. Similarly, in *Moura*, Harleysville also has a motion
to dismiss pending and the parties in *Eichacker* are at the summary judgment stage.  His reference
to *Halloran* is likewise inapposite, pursuant to the holdings in *Roberts* and *Hutchinson, supra,*

providing that trial court determinations cannot be the basis for common law or statutory bad faith claims.  Finally, Plaintiff has not cited to a single case where the Court has determined that Harleysville breached its contract in cases with identical or nearly identical policy language, or where Harleysville has been found to have violated CUTPA/CUIPA.  This is simply a dispute over the interpretation of certain provisions of the Policy – the exact type of dispute that has been and is still being litigated in bulk at this time, and the exact type of case that courts have tried to discourage, where bad faith claims are tacked on to breach of contract claims to "up the ante." Unless and until *Karas* and other similar cases at the appellate level are decided, insurers are permitted to operate under their reasonable interpretations of collapse provisions.  As such, Plaintiff has failed to sufficiently allege a general business practice, and his CUTPA/CUIPA claim fails as a matter of law.

## IV.   <u>CONCLUSION</u>

Defendant Harleysville Preferred Insurance Company respectfully requests that this Court grant its Motion to Dismiss Counts I, III, and IV of Plaintiff's Second Amended Complaint.

Dated:  West Hartford, Connecticut
         April 29, 2019

> **DEFENDANT,**
> **HARLEYSVILLE PREFERRED INSURANCE**
> **COMPANY**
>
> By:  __/s/ Robert D. Laurie__
>      Robert D. Laurie, Esq. ct24978
>      Heather L. McCoy ct28788
>      Seiger Gfeller Laurie LLP
>      977 Farmington Ave., Suite 200
>      West Hartford, CT 06107
>      Tel. 860-760-8400
>      Fax. 860-860-8401
>      rlaurie@sgllawgroup.com
>      hmccoy@sgllawgroup.com
>      Its Attorneys

14

## CERTIFICATION OF SERVICE

I hereby certify that on this 29th day of April 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


By:     /s/ Robert D. Laurie
              Robert D. Laurie, Esq. ct24978